USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 02/09/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                     :

  BERKLEY ASSURANCE COMPANY,      :
                                       :

                     Plaintiff,    :         1:24-cv-2809-GHW
                                       :

          -v-                    :         MEMORANDUM
                                       :         OPINION & ORDER

  HIGH QUALITY ORGANICS, INC., *et al.*,    :

                                       :

                   Defendants.   :

                                       :
----------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

Defendant High Quality Organics, Inc. ("HQO") is a supplier of organic herbs and spices. HQO learned that its parsley had tested positive for salmonella. HQO notified its customer, Red Monkey Foods ("RMF"). RMF sells spices and powdered spice blends, including several products for which HQO supplies parsley. RMF issued a product recall and undertook steps to prevent contamination of unsold merchandise. As a result of the contamination of HQO's parsley, RMF claims to have suffered more than one million dollars in damages. RMF demanded reimbursement from HQO. In a demand letter sent in February 2024, RMF threatened to sue to recover those damages.

To meet RMF's demand, HQO tendered claims against insurance policies it had purchased from Plaintiff Berkley Assurance Company ("Berkley") and Co-Defendant AXIS Insurance Company ("AXIS"). AXIS denied coverage and asserted that it had no obligations under the policy it had issued to HQO (the "AXIS Policy") because RMF had not sued HQO and because the policy did not provide coverage for RMF's damages. Berkley filed this declaratory judgment action against AXIS and HQO, seeking a declaration that HQO's claim was for damage covered by the AXIS Policy and not the policy Berkley issued to HQO (the "Berkley Policy"). HQO brought a crossclaim for declaratory judgment against AXIS and sought a declaration that AXIS must insure

HQO's third-party property damage as a result of the product recall.

HQO now moves for summary judgment on its counterclaim, and AXIS now moves to dismiss all claims against it and also moves for summary judgment on those claims. HQO seeks a declaration that RMF's claimed damages are covered under the AXIS Policy and that AXIS must indemnify HQO for the full amount of those damages. AXIS seeks to dismiss all claims against it for lack of subject matter jurisdiction and argues that there is no justiciable controversy because its obligations have not been triggered under the AXIS Policy. AXIS seeks summary judgment on the same basis. AXIS also argues that the damages are not covered "property damage" as defined by the AXIS Policy.

Even though RMF has not sued HQO two years after demanding reimbursement, AXIS's motion to dismiss is DENIED as to its duty to defend because RMF's demand letter and the large amount in controversy give rise to a practical likelihood that RMF will sue HQO. However, because RMF has not sued HQO, AXIS's duty to defend has not been triggered. Therefore, AXIS's motion for summary judgment is GRANTED as to its duty to defend.

Because HQO has not met its burden to show that there is a practical likelihood that it will become legally obligated to pay damages to RMF and because the Court exercises its discretion to decline jurisdiction over claims related to AXIS's duty to indemnify, AXIS's motion to dismiss is GRANTED as to its duty to indemnify. The parties' cross motions for summary judgment on the duty to indemnify are DENIED as moot.

I.      BACKGROUND[1]

A.      The AXIS Policy

HQO is a supplier of organic herbs, spices, and spice blends. *See* Dkt. No. 47 at 1 ("HQO

---

[1] The facts are drawn from the parties' Local Rule 56.1 statements and other documents submitted in connection with the parties' cross-motions for summary judgment and AXIS's motion to dismiss. They are undisputed in relevant part unless otherwise noted.

Mem."). AXIS is an insurance company. *See* Dkt. No. 49 ("HQO 56.1 Stmt.") ¶ 2. HQO

purchased an insurance policy from AXIS for a policy period that ran from March 31, 2020 to

March 31, 2021. *See* Dkt. No. 48 ("Bradley Decl."), Ex. B ("AXIS Policy").[2]

The AXIS Policy provided coverage for bodily injury and property damage. AXIS Policy at

26.[3] Under that coverage, the Policy describes AXIS's obligations to defend and indemnify HQO in

an Insuring Agreement, which states in relevant part:

> We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies. We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply. We may, at our discretion,
> investigate any "occurrence" and settle any claim or "suit" that may
> result.

*Id.*

The Policy states that "[w]ords and phrases that appear in quotation marks have special

meaning" and directs the reader to a section with definitions. *Id.* As is relevant to the coverage

dispute, "suit" and "property damage" are two such terms with "special meaning." The AXIS Policy

defines "property damage" as follows:

> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of
> use of that property. All such loss of use shall be deemed to occur at
> the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All
> such loss of use shall be deemed to occur at the time of the
> "occurrence" that caused it.

*Id.* at 40.

---

[2] HQO also purchased an insurance policy from Berkley. *See* HQO 56.1 Stmt. ¶ 2. The Berkley Policy is not relevant to the motions before the Court. The Court also notes that Berkley and HQO have reached a settlement. *See* Dkt. No. 44.
[3] The pagination of the AXIS policy reflects the ECF pagination.

The AXIS Policy also defines "suit" as follows:

> 18: "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:
>
> a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>
> b.  Any other alternative dispute resolution proceeding to which such damages are claimed and to which the insured submits with our consent.

*Id.* at 41.

The AXIS Policy also contains several exclusions to which "[the] insurance does not apply."

*Id.* at 27.  Two are relevant to the motions before the Court:  Exclusion M (the "Impaired Property Exclusion") and Exclusion N (the "Product Recall Exclusion").

Under the Impaired Property Exclusion, the "insurance does not apply to":

> **m. Damage to Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to *"impaired property"* or property that has not been physically injured arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

*Id.* at 30 (emphasis added).

Under the Product Recall Exclusion, the "insurance does not apply to":

> **n. Recall of Products, Work Or Impaired Property**
>
> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1) "Your product";
>
> (2) "Your work"; or

*(3) "Impaired property"*;

> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

*Id.* (emphasis added).

Both the Impaired Property Exclusion and the Product Recall Exclusion refer to "impaired property." The AXIS Policy defines "impaired property" as follows:

> 8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> *if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.*

*Id.* at 38 (emphasis added).[4]

## B.     The Coverage Dispute

In October 2020, HQO learned that some of its dried parsley had tested positive for salmonella. *See* HQO 56.1 Stmt. ¶¶ 6–7. HQO issued a recall notice to its customers who had purchased the contaminated parsley, including RMF, a seller of spices and spice blends. *See* Dkt. No. 52-14 ("AXIS 56.1 Stmt.") ¶ 1. RMF instituted a voluntary recall of its products soon after. *See* HQO 56.1 Stmt. ¶ 8.

On February 3, 2021, HQO tendered a claim related to the contaminated parsley against the AXIS Policy. *See* AXIS 56.1 Stmt. ¶ 2. In October 2021, AXIS responded, stating its position that it had no "current obligations under the AXIS Policy" because a lawsuit against HQO had not yet

---

[4] As is also relevant to both exclusions, the AXIS Policy defines "your product" as "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the policyholder. AXIS Policy at 41.

been filed.  Dkt. No. 52-1 ("Joglekar Decl."), Ex. C.  AXIS also reserved the right to deny coverage

based on the Product Recall Exclusion.  *Id.* at 4–5.  HQO responded to that letter on October 25,

2021, asserting that its claim arose "from property damage caused by HQO's allegedly contaminated

parsley, which was incorporated into customers' products," and that such products were not

"impaired property."  Joglekar Decl., Ex. D.  In November 2021, AXIS repeated its position that it

had no coverage obligations because no lawsuit had been filed.  Joglekar Decl., Ex. E.  AXIS stated

that it had reviewed the documentation it had received and had "not found any demands to HQO

related to its customers' product into which [the parsley] had been incorporated."  *Id.* at 4.

On January 26, 2024, HQO urged AXIS to reconsider its coverage position and informed

AXIS that it had additional information regarding RMF's claimed damages.  *See* Joglekar Decl.,

Ex. F.  HQO stated that it had determined that RMF was demanding damages totaling $884,659.  *Id.*

HQO attached a report created by Johnstone Partners LLP following an investigation into RMF's

claimed damages.  *See* Joglekar Decl., Ex. G; *see also* Bradley Decl., Ex. E ("Johnstone Report").

That report grouped RMF's claimed damages into six categories:  "Customer Chargebacks," "Air

Freight Onion Granules," "Disposition of Materials," "Certified Lab Testing," "On-Site Audit," and

"Untreated Material Cost."  Johnstone Report at 1–2.  The report referenced the work of Baker Tilly

LLP, which generated its own analysis of RMF's claimed damages (the "Bakery Tilly Report").

Joglekar Decl., Ex. L ("Baker Tilly Report").[5]

In this lawsuit, AXIS and HQO dispute whether the Baker Tilly Report establishes that

RMF's products incorporated HQO's contaminated parsley.  The Report, on its "Summary of Loss"

page, includes a paragraph that states:

> Based on discussions with Red Monkey, we understand *that these
> items/products do not contain the recalled parsley*.  This claim relates to other

---

[5] The Baker Tilly Report appears to have been prepared for Johnstone Partners LLP, the firm that conducted the investigation into RMF's damages on behalf of Berkley.  *See* Baker Tilly Report at 1 (noting the report was "Prepared For" "Matt Hagan, Johnston Partners."); *see also* HQO 56.1 Stmt. ¶ 12.

> materials supplied by HQO that Red Monkey found to have not been treated to Red Monkey's standards. We understand that this was discovered after the fact during additional investigation by Red Monkey of HQO's facility and process. We have not requested or reviewed additional underlying support related to this portion of the claim. We defer to Insurers with regards to coverage prior to reviewing this portion of the claim.

Baker Tilly Report at 4 (emphasis added). AXIS argues that "these items/products" refers to all of RMF's recalled products, and that therefore none of RMF's products contained the contaminated parsley. Dkt. No. 52-15 ("AXIS Mem.") at 3. HQO argues that this phrase instead refers solely to the Untreated Material Cost. *See* Dkt. No. 56 ("HQO Reply") at 5. HQO also references the affidavits it submitted alongside its motion in support of its assertion that RMF's products did incorporate HQO's parsley. *See id.* at 4–5.

On February 6, 2024, AXIS responded to HQO's January 26, 2024 letter. It once again "denied coverage because: (1) a lawsuit had not been filed against HQO; (2) HQO had no legal obligation to pay damages that could be potentially covered; and (3) there was no alleged property damage." AXIS 56.1 Stmt. ¶ 8.

On February 16, 2024, RMF demanded reimbursement from HQO for damages totaling $1,071,888.51.[6] *See* Bradley Decl., Ex. F ("Demand Letter"). This included a claim for an additional $187,229.51 on top of the $884,659 identified in the Johnstone Report, reflecting "unusable inventory still sitting in a RMF warehouse and reflected in RMF's financials as obsolete as a result of the product recall" (the "Unusable Inventory"). *Id.* at 1. RMF demanded full payment of that amount within fourteen days and stated that it was "prepared to escalate this matter and enforce its legal rights through litigation in which it will seek damages including interest . . . ." *Id.*

---

[6] HQO's statement of undisputed material facts states that the amount is $1,071,881.51. HQO 56.1 Stmt. ¶ 9. AXIS does not dispute this amount. Dkt. No. 53-1 ¶ 9. HQO's Rule 56.1 Statement points to the Wirtz Declaration, which states the number as $1,071,888.51. *See* Dkt. No. 50 ¶ 9. This second number is corroborated by the Demand Letter, which states that RMF seeks reimbursement for $884,659 and $187,229.51. The sum of those two numbers is $1,071,888.51.

HQO informed AXIS of the letter the same day.  AXIS 56.1 Stmt. ¶ 10.  On February 22, 2025—for the final time before the commencement of this litigation—AXIS denied coverage. *Id.* ¶ 11.  AXIS argued in a letter to HQO that (1) "the costs allegedly incurred by RMF did not constitute property damage;" (2) "there was otherwise no duty to defend or provide coverage as a lawsuit had not been filed;" and (3) "HQO had no legal obligation to pay damages."  *Id.*

In sum, from the time that HQO first tendered its claim through the commencement of this litigation, AXIS maintained the position that it did not have any duty to defend or indemnify HQO because RMF has not sued HQO.  Prior to this litigation, AXIS also took the position that the damages were not covered under the AXIS Policy.

### C.      Procedural History

Berkley commenced this declaratory judgment action against HQO and AXIS on April 12, 2024.  Dkt. No. 6.  Berkley sought a declaratory judgment against AXIS finding that the "vast majority of damages sought by HQO are third party Property Damage . . ." not covered under the Berkley Policy.  *Id.* ¶ 41.  Berkeley also sought a declaratory judgment against AXIS finding that "to the extent any of the damages sought by HQO are covered under both the Axis Policy and Berkley Policy[,]" Berkley "has no obligations under the [Berkley] Policy . . . ."  *Id.* ¶ 49.  Berkley amended its complaint on June 27, 2024 and added a cause of action seeking a declaration that RMF's third-party Property Damage demand to HQO "is covered under the [AXIS] Policy."  Dkt. No. 16 ¶ 83.

On August 1, 2024, HQO brought a crossclaim against AXIS seeking a declaration that RMF's damages are covered by the AXIS Policy.  Dkt. No. 22 ¶¶ 5–17.

On March 14, 2025, HQO filed a motion for summary judgment on its crossclaim.  HQO asked the Court to find that all of RMF's claimed damages as set forth in the Demand Letter are "covered property damage under the AXIS Policy" and that AXIS had a duty to indemnify HQO for the full amount of those damages.  *See* HQO Mem. at 1–2.  HQO argued that, under New York

law, incorporation of a defective product into another product results in "property damage" within the meaning of the AXIS Policy. *Id.* at 5–7. HQO then argued that five of the categories of damages described in the Johnstone Report were covered property damage because they resulted from the incorporation of HQO's contaminated parsley into RMF's products. *Id.* at 7–9. As to the Untreated Material Cost and the Unusable Inventory, HQO argued that those damages are covered as "loss of use of tangible property that is not physically injured." *Id.* at 9–11.

AXIS moved to dismiss all claims against it for lack of subject matter jurisdiction and moved, in the alternative, for summary judgment on all those claims. *See* AXIS Mem. AXIS first argued that Nevada law governed the interpretation of the AXIS Policy under New York's choice of law rules. *Id.* at 8–9. AXIS then argued that the Court lacked subject matter jurisdiction over the claims against it because neither its duty to defend nor its duty to indemnify HQO had been triggered. *Id.* at 10–16. In particular, AXIS argued that RMF had not sued HQO and that HQO had not become legally obligated to pay damages. *Id.* AXIS argued that it was entitled to summary judgment for the same reasons. *Id.* at 16. AXIS also argued that it was entitled to summary judgment because the damages claimed by RMF do not constitute covered "property damage" because the parsley was not incorporated into RMF's products and RMF did not lose any use of its products. *Id.* at 18–22. AXIS also argued that even if the Insuring Agreement was satisfied, the Impaired Property Exclusion precluded coverage because any property damage was to "impaired property." *Id.* at 22–23. Finally, AXIS argued that the Product Recall Exclusion precluded coverage because RMF's claimed damages are for losses it incurred as a result of a recall of "impaired property" or of HQO's product. *Id.* at 23–26.

Both parties filed their briefs in opposition on April 11, 2025.[7] HQO first argued that the Court had subject matter jurisdiction over the question of AXIS's duty to indemnify because it had a

---

[7] Though AXIS's motion was not limited to HQO's crossclaim, Berkley did not oppose AXIS's motions.

present legal obligation to reimburse RMF under its contract with RMF.  Dkt. No 54 ("HQO Opp.") at 6–8.  HQO also argued that there was subject matter jurisdiction over the question of AXIS's duty to defend under the Second Circuit's standard because there was a "practical likelihood" that RMF will sue HQO.  *Id.* at 8–10.  HQO then argued that the full amount of the RMF claim constituted covered property damage because the parsley had been inextricably incorporated into RMF's products.  *Id.* at 12–15.  HQO also argued that damages not arising out of the incorporation of parsley constituted property damage because they were covered as the "loss of use of tangible property that is not physically injured."  *Id.* at 15–17.  Finally, HQO argued that the spice blends were not "impaired property" because there was "no way to restore RMF's powdered spice blends to use after being contaminated by HQO's parsley."  *Id.* at 18–19.  Both because the spice blends were not impaired property and because the damages claimed were due to recall of RMF's spice blends rather than HQO's products, HQO argued that neither exclusion applied.  *Id.* at 17–22.  HQO did not address AXIS's argument that it was entitled to summary judgment because AXIS's obligations had not been triggered.

In its opposition to HQO's motion for summary judgment, AXIS repeated its argument from its moving papers that none of RMF's recalled products contained the recalled parsley, and that therefore any of RMF's claimed damages were not the result of covered "property damage." Dkt. No. 53 ("AXIS Opp.") at 5–8.  AXIS also argued that HQO had not demonstrated that any damages were the result of "loss of use of tangible property that is not physically injured."  *Id.* at 8–10.  AXIS also restated its argument from its moving papers that the Impaired Property Exclusion and the Product Recall Exclusion applied because the spice blends were "impaired property." *Id.* at 10–12.

The motions were fully submitted when the parties filed their reply briefs on April 25, 2025. HQO repeated its arguments that each of RMF's claimed damages arose out of covered "property

damage" either because HQO's parsley was incorporated into RMF's products and could not be removed or because the damages arose out of "loss of use of tangible property that is not physically injured." HQO Reply at 3–9. HQO also repeated its arguments first raised in its opposition to AXIS's motion that neither exclusion applied. *Id.* at 9–11.

In addition to reprising its core arguments, AXIS responded to several points HQO raised in opposition. *See* Dkt. No. 55 ("AXIS Reply"). In response to HQO's argument that there was a "practical likelihood" that RMF would sue HQO, AXIS argued that a single demand letter sent over a year ago did not establish such a practical likelihood. *Id.* at 3. AXIS also highlighted HQO's failure to oppose AXIS's arguments in support of its motion for summary judgment that neither obligation had been triggered. *Id.* at 4. AXIS argued that even if the duty to indemnify could be triggered by a legal obligation arising out of a contract, HQO had not proffered sufficient facts to establish that such an obligation has been triggered here. *Id.* at 6–7. Finally, AXIS repeated its arguments that the damages were not covered property damage because HQO's parsley had not been incorporated into RMF's products and because HQO had not shown that any damages were from "loss of use of tangible property that is not physically injured." *Id.* at 7–9. AXIS concluded by arguing that the previously noted exclusions precluded coverage. *Id.* at 9–11.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The same standard governs motions under Federal Rules of Civil Procedure 12(h)(3) and 12(b)(1). *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 512 (S.D.N.Y. 2022), *aff'd,* No. 23-947, 2024 WL 2720235 (2d Cir. May 28, 2024). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt Street*

*Recovery Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotations and citations omitted).  "A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction."  *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 177 (2d Cir. 2001).  "Jurisdiction exists only if there is an 'actual controversy,' which has been defined as one that is 'real and substantial admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *Id.* (quoting *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)) (internal citations omitted).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  "The Supreme Court has 'explained that the phrase case of actual controversy in the DJA refers to the same type of Cases and Controversies that are justiciable under Article III.'"  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).  "Thus, the DJA does not *expand* the subject[-]matter jurisdiction of the federal courts; rather, the relevant inquiry for the DJA's case-of-actual-controversy prerequisite is *coextensive* with the analysis applicable to the case-or-controversy standard embodied in Article III."  *Id.* (internal quotations, citations, and brackets omitted; emphasis in original).  "'The difference between an abstract question and a controversy contemplated by the [DJA] is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.'"  *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  "'That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory[-]judgment action.  Rather, courts should focus on the *practical likelihood* that the [relevant] contingencies will occur.'"  *Id.* (quoting *Emps. Ins. of Wausau v.*

12

*Fox Ent. Grp., Inc.*, 522 F.3d 271, 278 (2d Cir. 2008)) (emphasis in original).

"When applying the practical-likelihood standard in insurance coverage disputes, [courts] must account for the fact that an insurer's duty to defend is distinct from its duty to indemnify, and that insurance law applies very different presumptions to each." *Niagara Transformer Corp.*, 57 F.4th at 93 (cleaned up). "Because 'the duty to defend is triggered by the filing of a lawsuit while the duty to indemnify is triggered by a determination of liability,' a district court's jurisdiction to declare an insurer's duty to defend and its duty to indemnify turn on different inquiries—each involving the practical likelihood that the triggering event will occur." *Id.* (quoting *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013)). "Accordingly, a district court 'may' well have jurisdiction to 'issue a declaratory judgment on [an insurer's] duty to defend,' even 'while holding that the duty to indemnify is not ripe for adjudication.'" *Id.* (citing *Value Waterproofing, Inc.*, 918 F. Supp. 2d at 261).

"[E]ven in circumstances when a declaratory judgment would serve a useful purpose in clarifying and settling the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding, district courts retain broad discretion to decline jurisdiction under the DJA." *Niagara Transformer Corp.*, 57 F.4th at 99 (internal quotations, citations, and brackets omitted). "[T]he following considerations, to the extent they are relevant in a particular case, should inform a district court's exercise of such discretion":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Id.* at 99–100 (internal quotations, citations, and brackets omitted). District courts have "'broad discretion'" to weigh these factors. *Id.* at 100 (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)). Thus, "no one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment." *Id.* A district court also has "wide latitude to address other factors as relevant to the ultimate question of whether 'the normal principle that federal courts should adjudicate claims [over which they have] jurisdiction' should 'yield[] to considerations of practicality and wise judicial administration' in a particular case." *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

### B.    Motion for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The party moving for summary judgment bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). If that initial burden is satisfied, the burden "shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim." *Id.* To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a

14

genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). The Court's job is not to "weigh the evidence or resolve issues of fact . . . ." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" *Peterson v. Kolodin*, No. 13-cv-793, 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cnty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *accord Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). The Court is not required to resolve the case on summary judgment merely because both parties move for summary judgment. *See Morales*, 249 F.3d at 121.

III.      DISCUSSION

A.      Applicable Law

Nevada law applies to the parties' dispute.  A federal court sitting in diversity must apply the choice of law rules of the forum state.  *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021).  Under New York's choice of law rules, the substantive law of Nevada controls this dispute. In contractual disputes, New York courts apply "the 'center of gravity' or 'grouping of contacts' choice of law theory."  *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 822 F.3d 620, 641 (2d Cir. 2016) (quoting *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 225 (1993)).  "The New York Court of Appeals has endorsed the following factors (identified in the Restatement Second of Conflict of Laws):  the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties."  *Id.* at 642 (quoting *Schwartz v. Liberty Mut. Ins. Co.,* 539 F.3d 135, 151–52 (2d Cir. 2008) (citation modified)).  "'Critical to a sound analysis, however, is selecting the contacts that obtain significance in the particular contract dispute.'"  *Id.* (quoting *Stolarz*, 81 N.Y.2d at 226).

In the context of insurance disputes, "[t]he New York Appellate Divisions have repeatedly recognized that 'where the insured risk is scattered throughout multiple states, [New York] courts . . . deem the risk to be located principally in one state, namely, in the state of the insured's domicile at the time the policy was issued,' and thus have held that 'the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk.'"  *Id.* (quoting *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 35, 36 (1st Dep't 2006)).  "These courts have noted that '[t]he state of the insured's domicile is a fact known to the parties at the time of contracting, and . . . application of the law of that state is most likely to conform to their expectations.'"  *Id.* (quoting *Foster Wheeler Corp.*, 822 N.Y.S.2d at 34–35).

The principal location of the insured risk is Nevada.  HQO is domiciled in Nevada and has

16

its principal place of business in Nevada, and the AXIS Policy has seven Nevada endorsements and was delivered to HQO in Nevada. AXIS Mem. at 9. After applying the grouping of contacts theory and weighing the significance New York courts place on the location of the policyholder's domicile, the Court concludes that Nevada has the most significant relationship to the dispute. Accordingly, the Court will apply Nevada law to construe the AXIS Policy.

### B. Subject Matter Jurisdiction

The Court has subject matter jurisdiction to issue a declaration as to AXIS's duty to defend, but not its duty to indemnify. There is a practical likelihood that the triggering event will occur as it relates to the duty to defend. "[A]s a general rule, an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011). "Because the duties undertaken by an insurer are dictated by the terms of its contract with the policyholder, however, an insurer is free to contractually limit these duties—that is, to contract its way around this general rule." *Id.* "[I]nsurance policies are contracts of adhesion,"—*i.e.*, "the policies are drafted by the insurer and are offered to the policyholder without any opportunity for the policyholder to negotiate the policy's terms." *Id.* Therefore, "in order for an insurer to effectively limit its contractual obligations, the insurance policy's language must unambiguously convey the insurer's intent to do so." *Id.*

The AXIS Policy unambiguously limits AXIS's duty to defend to a defined set of circumstances—*i.e.*, "suits." The Insuring Agreement states that "[AXIS] will have the right and duty to defend [HQO] against any 'suit' seeking [specified types of] damages." AXIS Policy at 26. In the following sentence, the AXIS Policy cabins AXIS's obligation, stating that "[AXIS] will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.* The Policy directs the reader to a definitions section, where the definition of "suit" can be found. *Id.* As detailed above, a "suit" can be any "civil

proceeding," including an "arbitration proceeding" or "[a]ny other alternative proceeding" "to which the insured must submit or does submit with [AXIS's] consent" *Id.* at 41. Consistent with the principle under Nevada law that an insurer may limit its contractual obligations through unambiguous language, the Supreme Court of California has held that "by specifying that only a 'suit,' and not a 'claim' triggers the duty to defend, [an insurer] ha[s] drawn an unambiguous line to define and limit their contractual obligation."[8] *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 282 (Cal. 1998); *accord Kinsale Ins. Co. v. R.P. Ruiz Corp.*, 764 F. Supp. 3d 935, 943 (C.D. Cal. 2025). Therefore, the appropriate trigger for AXIS's duty to defend is the existence of a "suit" as defined in the AXIS Policy.

There is a practical likelihood that RMF will bring such a "suit." It is undisputed that RMF has threatened a lawsuit to recover over a million dollars in damages it asserts HQO must pay. *See* Demand Letter. It is true, as AXIS argues, that this demand was made nearly two years ago, and that RMF has not acted on its threat to file suit even though there is no evidence in the record that HQO paid RMF any amount within the fourteen day deadline set in the Demand Letter.[9] Even so, the unambiguous language of the Demand Letter and the large amount sought by RMF weigh heavily in favor of a finding that there is a practical likelihood that RMF will sue. Accordingly, the Court has subject matter jurisdiction over the parties' dispute over AXIS's duty to defend.[10]

The Court does not have jurisdiction over the parties' dispute as it relates to AXIS's duty to indemnify. The AXIS Policy obligates AXIS to "pay those sums that the insured becomes *legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which [the insurance

---

[8] While the AXIS Policy does not define "claim," the Insurance Agreement discusses claim as distinct from a "suit." *See* AXIS Policy at 26 ("We may, at our discretion, investigate any offense and settle any *claim or 'suit'* that may result." (emphasis added)).
[9] The Court understands that RMF and HQO remain engaged on the issue of whether (and how) HQO will pay RMF. *See* HQO Opp. at 10.
[10] The Court will address AXIS's argument that RMF has not yet filed suit when it considers the merits of AXIS's motion for summary judgment as to its duty to defend. *See* section III.C, *infra.*

18

policy] applies." AXIS Policy at 26 (emphasis added). Under Nevada law, a legal obligation to pay damages may arise by virtue of a court order requiring an insured to make a payment or by virtue of legal obligations arising under a contract. *See Big-D Const. Corp. v. Take it for Granite Too*, 917 F. Supp. 2d 1096, 1116–17 (D. Nev. 2013) (construing similar policy language under Nevada law). RMF has not yet filed suit, and it is therefore not a practical likelihood that HQO will have to pay any sum to RMF by virtue of a court order. HQO has also not met its obligation to demonstrate that there is a practical likelihood that it will become obligated to pay anything under any contract. HQO states that its obligation "arises under the contract between the parties." HQO Opp. at 8. HQO does not offer any evidence to support this argument, including the contract it argues gives rise to its obligation.[11] On this record, the Court cannot hold that there is a practical likelihood that HQO will become legally obligated to pay RMF damages because of applicable "property damage" or "bodily injury." Accordingly, the Court finds that it does not have subject matter jurisdiction to determine AXIS's duty to indemnify.

Balancing the discretionary factors from *Niagara Transformer Corporation* independently justifies dismissing claims related to AXIS's duty to indemnify. 57 F.4th at 99–100. The first, second, and sixth factors weigh against the exercise of jurisdiction. The first factor concerns whether the judgment sought would "serve a useful purpose in clarifying or settling the legal issues involved." *Id.* The utility of resolving the legal issues in this case is diminished because there are disputed facts that cannot be resolved on this record. *See Gucci Am., Inc. v. Guess?, Inc.*, 843 F. Supp. 2d 412, 430 (S.D.N.Y. 2012) ("In a situation where the evidence supports competing inferences, summary judgment is not appropriate."). For instance, the parties dispute whether there was covered "property damage." The AXIS Policy only obligates AXIS to indemnify HQO for sums the

---

[11] The Court does not understand the Demand Letter to be a contract or to contain any references to how HQO's obligations arise out of its contract with RMF. The letter simply reflects RMF's position regarding its entitlement to damages. *See* Demand Letter.

latter is obligated to pay because of covered "property damage." AXIS Policy at 26. Both parties cite California courts interpreting similar policies holding that the incorporation of a defective product into another product causes physical injury to the composite product if the offending component cannot be readily removed. *See Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 865 (1st Dist. 2000); *Blue Isle of California, Inc. v. Hartford*, No. CV-01-0205CASMANx, 2002 WL 34455175, at *5–6 (C.D. Cal. Mar. 13, 2002), *aff'd*, 66 F. App'x 704 (9th Cir. 2003) (applying California law).[12]

Assuming without deciding that Nevada courts would reach a similar conclusion, determining AXIS's indemnity obligations requires resolving at least two disputed factual questions: whether HQO's contaminated parsley was incorporated into RMF's spice blends and whether it could have been removed or replaced. The Policy's exclusions raise a similar issue. The AXIS Policy also excludes from coverage damages claimed due to "property damage" to or recall of "impaired property." AXIS Policy at 30 (describing the Impaired Property Exclusion and the Product Recall Exclusion). "Impaired property" is limited to property that "can be restored to use by the repair, replacement, adjustment or removal of 'your product' . . . ." *Id.* at 38.

The parties argue for competing interpretations of the evidence in the record on whether the parsley was incorporated into RMF's products. As described above, HQO and AXIS dispute the interpretation of the Baker Tilly Report. Under AXIS's interpretation, RMF's recalled product did not contain HQO's parsley. AXIS Mem. at 3. Under HQO's, at least some of RMF's damages did arise out of the incorporation of HQO's contaminated parsley into RMF's products. HQO Reply at 4–5. Resolving these conflicting interpretations likely requires further proceedings. *Gucci Am., Inc.*,

---

[12] "In the context of interpreting insurance policy terms, the Nevada Supreme Court has often looked to persuasive precedent from other jurisdictions, especially California." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1234 n.11 (D. Nev. 2010) (citing *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 184 P.3d 390, 395 (Nev. 2008), then *Jackson v. State Farm Fire & Cas. Co.*, 835 P.2d 786, 789 n.4 (Nev. 1992))). The Court adopts that approach here. *See id.*

843 F. Supp. 2d at 430.

The parties also dispute whether the parsley could have been removed from the spice mixes. HQO points to the impossibility of removing "every particle of contaminated parsley from the powdered spice blends." HQO Opp. at 15. AXIS points to language in the Baker Tilly Report that it argues shows that RMF was able to replace onions in certain spice blends. AXIS Reply at 9. AXIS argues that the ability to remove onions implies that the component parts of a spice blend can be removed to "restore the blend to use." *Id.* The evidence in the record does not resolve this question. Accordingly, there is limited utility to resolving the legal questions of insurance policy interpretation. *Cf. CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 227–28 (S.D.N.Y. 2023) ("With respect to the first *Admiral Insurance* factor, this fundamentally factual question"— whether Plaintiff sold counterfeit products— "is not a legal issue for the court to declare, and therefore declaratory judgment is not appropriate." (internal quotations omitted)).

The second and sixth factors also weigh in favor of dismissal. The second factor asks whether any a declaratory judgment would "finalize the controversy and offer relief from uncertainty." *Niagara Transformer Corp.*, 57 F.4th at 100. Even if the Court were to resolve the question of AXIS's indemnification obligations under the AXIS Policy based on the facts in the record, uncertainty would remain because RMF has not yet acted on its threat to sue HQO. *See Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins. Co.*, 685 F. Supp. 3d 187, 216 (S.D.N.Y. 2023) ("Further, a declaration would in no way finalize the controversy or settle the underlying legal issues, as liability would still need to be resolved in the Underlying Action."). In such a suit, RMF may seek damages apart from the ones this record demonstrates it has already sought. In the Demand Letter, RMF asserted that it is entitled to payment for damages that neither Johnstone nor Baker Tilly considered in their reports. *Compare* Baker Tilly Report at 3 (analyzing $884,659 damages "as claimed"), *with* Demand Letter at 1 ("In addition to the verified claim of $884,659, RMF has

*recently identified* an additional $187,229.51 of unusable inventory . . . ." (emphasis added)).  RMF may identify other damages in a future lawsuit.  Even if the Court were to make a determination on the damages that RMF identified in its Demand Letter, HQO may seek coverage for any new damages RMF asserts in a future lawsuit.  *See Travelers Prop. Cas. Co. of Am.*, 685 F. Supp. 3d at 216.

For similar reasons, a declaratory judgment would not serve the interests of judicial economy and efficiency—the sixth factor.  *Niagara Transformer Corp.*, 57 F.4th at 100.  A future lawsuit by RMF might result in further litigation regarding the scope of AXIS's indemnity obligations.  *See Starr Indem. & Liab. Co. v. Scottsdale Ins. Co.*, No. 24-CV-3309 (PKC) (TAM), 2025 WL 2783106, at *6 (E.D.N.Y. Sept. 30, 2025) ("[A]ll else being equal, reducing the number of court proceedings involved with any given issue entails a more efficient use of judicial resources." (quoting *TIG Ins. Co. v. Fairchild Corp.*, No. 07-CV-8250 (JGK), 2008 WL 2198087, at *4 (S.D.N.Y. May 27, 2008)).  In addition, it would be more efficient to determine liability after any lawsuit.  As identified above, the parties dispute facts that relate to RMF's products and RMF's ability to repair or replace the blends that contained the contaminated parsley.  If RMF files suit, discovery of RMF's claimed damages would likely bear on those questions.  Given the sparse factual record before the Court, it would be more efficient to determine AXIS's obligations with a factual record that more completely captures RMF's theory of damages.  *See id.*

The third and fifth factors[13] do not change the conclusion.  It does not appear that HQO filed its request for declaratory relief for "procedural fencing or a race to res judicata."  HQO was not the first party to seek a declaration of AXIS's coverage obligations in this action; Berkley first sought a declaration that it "ha[d] no obligations under the [Berkley] Policy to the extent any of the damages sought by HQO are covered by the Axis Policy . . . ."  Dkt. No. 6 ¶ 49; *cf. Starr Indemnity &*

---

[13] The fourth factor is not relevant, because there is no pending state court action between the parties and, in any event, the parties are diverse and could remove any state court action to federal court. *See Starr Indem. & Liab. Co. v. Exist, Inc.*, No. 23-912, 2024 WL 503729, at *2 (2d Cir. Feb. 9, 2024).

*Liability Co.*, 2024 WL 503729, at *1 (affirming district court's conclusion that insurer's declaratory judgment action constituted "procedural fencing or a race to res judicata" because it informed policyholder of coverage decision "only via federal complaint"). While the presence of procedural gamesmanship might justify declining jurisdiction, *id.*, it does not follow that its absence justifies exercising it when balanced against the factors that favor declining jurisdiction in this case.

The fifth factor—whether there is a more effective remedy—weighs slightly in favor of exercising jurisdiction, but not enough to tip the balance. In insurance coverage disputes, "[l]iability for past damages can be addressed just as easily in an ordinary suit for breach of contract." *Starr Indemnity & Liability Co.*, 2024 WL 503729, at *1. That option is not available to HQO here because HQO seeks a declaration on AXIS's obligation to pay "future damages." *Id.* The absence of a more effective remedy does not justify exercising jurisdiction here because the analysis of the other factors demonstrates the limited value of the remedy sought in this case.

Accordingly, AXIS's motion to dismiss for lack of subject matter jurisdiction is denied as to its duty to defend HQO but granted as to its duty to indemnify HQO.

**C. Summary Judgment**.

The Court grants AXIS's motion for summary judgement as to the duty to defend and denies the cross-motions for summary judgment on the duty to indemnify. Having granted AXIS's motion to dismiss as to its duty to indemnify HQO, the Court denies the parties' cross-motions for summary judgment on the duty to indemnify as moot.

AXIS has no present duty to defend HQO. As discussed above, AXIS has unambiguously limited the trigger for the duty to defend to be the initiation of a "suit" as defined in the AXIS Policy. The undisputed evidence in the record demonstrates that there is no such "suit" against which AXIS must defend. RMF has not initiated a court proceeding against HQO, nor is there any evidence that RMF has commenced an arbitration or any other alternative proceeding to which

23

HQO must submit.  On the record before the Court, the only avenue by which RMF has sought recovery of damages is by seeking HQO's voluntary compliance with its demand for compensation as set forth in the Demand Letter.  The Demand Letter itself does not indicate that RMF has initiated any proceeding and only states RMF's intent to commence a proceeding.  *See* Demand Letter at 2.  AXIS therefore has no present duty to defend HQO.

Accordingly, the Court grants AXIS's motion for summary judgment as to its duty to defend.

## IV.     CONCLUSION

For the reasons stated above, the Court GRANTS AXIS's motion to dismiss for lack of subject matter jurisdiction as it relates to the duty to indemnify and DENIES it as it relates to the duty to defend.  The parties' cross motions for summary judgment relating to the duty to indemnify are therefore DENIED as moot.  The Court GRANTS AXIS's motion for summary judgment on the duty to defend.

The Clerk of Court is directed to terminate the motions pending at Dkt. No. 46 and 52.

SO ORDERED.

Dated:  February 9, 2026
      New York, New York
                                      GREGORY H. WOODS
                                 United States District Judge